**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **JOSE ANTONIO TORRES-GUIZAR (#9250-479),** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **No. 3:25 C 50012** |
| **WARDEN B. LAMMER, FCI Thomson,** | ) | **Judge Rebecca R. Pallmeyer** |
| **Respondent.** | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Jose Antonio Torres-Guizar is currently incarcerated at the Federal Correctional Institution Thomson ("Thomson") serving a 120-month sentence for conspiracy with intent to distribute five kilograms or more of cocaine. He is also the subject of an immigration detainer. Torres-Guizar has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2241, seeking early prerelease placement to a residential reentry center or, in the alternative, home confinement. He asks the court to order the Bureau of Prisons ("BOP") to transfer him to prerelease custody as authorized by the First Step Act. BOP has a policy directive that bars prerelease custody for persons like Petitioner who are subject to immigration retainers, and courts across the nation are divided as to whether they are bound by this policy. This court has found no controlling authority directly addressing of what discretion BOP can exercise to deny prisoners subject to immigration detainers the ability to use FSA credits toward prerelease custody. For the following reasons, the court concludes BOP does not have such discretion. The court therefore grants Torres-Guizar's petition and directs BOP to release him into prerelease custody.

## BACKGROUND

### I. Petitioner's Background

Torres-Guizar is incarcerated at Thomson, serving a 120-month sentence with a projected First Step Act early release date of November 21, 2026. (Petition [1] at 2.) He is also a noncitizen

with an active immigration detainer. (Def. Resp. [8] at 2.) He filed this *pro se* petition on January 10, 2025, seeking prerelease custody placement when he asserts he became eligible for it, on May 20, 2025. (Petition [1] at 1–2.) He also became eligible for home confinement on May 21, 2026. (Inmate data [8] at 19.) As of March 2025, Torres-Guizar had earned 365 time credits that may be applied to early release and 520 time credits that may be applied for prerelease placement or home confinement. (Def. Resp. [8] at 2.) Petitioner argues that he now may have even more; he references 600 credits. (Letter to Clerk [20] at 2.) But the court notes that, because he has far fewer than 520 days to which he could apply his prerelease credits—he would only need to provide credits between now November 21, 2026—the exact number of credits above 520 that he has is irrelevant.

## II. Statutory Background

Congress granted BOP the authority to designate a prisoner's placement in custody through 18 U.S.C. §§ 3621(b) and 3624(c). *Mohammed v. Engleman*, No. 2:25-cv-01011-MWC-MBK, 2025 WL 1909836, at *1 (C.D. Cal. June 9, 2025). Under § 3621(b), the "Bureau of Prisons shall designate the place of a prisoner's imprisonment." 18 U.S.C. § 3621(b). Courts in the Seventh Circuit have interpreted this to mean that the BOP has broad discretion in deciding where to house federal prisoners. *See Green v. Yates*, No. 23-CV-1623-SMY, 2023 WL 3996667, at *2 (S.D. Ill. June 14, 2023) (citing *Matter of Gee*, 815 F.2d 41, 42 (7th Cir. 1987)). Under 18 U.S.C. § 3624(c), "the BOP is charged with preparing prisoners who are approaching the end of their sentences for re-entry into society." *Lyttle v. Inch*, No. 2:17-cv-00153-JMS-DLP, 2018 WL 1410192, at *1 (S.D. Ind. Mar. 21, 2018). BOP may place a prisoner into "prerelease custody," that is placement in home confinement or a "community correctional facility," also known as an RRC. 18 U.S.C. §§ 3624(c), 3624(g)(2).

On December 21, 2018, Congress modified this statutory scheme by enacting the First Step Act. First Step Act, Pub. L. No. 115-391, 132 Stat. 5194. The statute established a system of time credits that inmates could earn by participating in evidence-based recidivism reduction

("EBRR") programs or other productive activities. 18 U.S.C. § 3632(d)(4)(A). The statute also directs that time credits earned under this program "shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). "The Director of the [BOP] shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." *Id.* Time credits can apply to supervised release only up to 365 days. *Id.* § 3624(g)(3). Additional credits, then, may be applied to prerelease custody.

The statute enumerates a list of prisoners ineligible to receive time credits. Persons convicted under certain provisions of law, including those relating to the use of fire or an explosive, to unlawful possession of a firearm, or 66 other provisions of law, are ineligible to accrue time credits. § 3632(d)(4)(D) (enumerating 68 crimes in total). A prisoner may earn credits, but is ineligible to apply them, "if the prisoner is the subject of a final order of removal under any provision of the immigration laws." § 3632(d)(4)(E)(i).

Since 2018, BOP has issued several arguably conflicting policies on implementation of the FSA with respect to prisoners with an immigration detainer. On November 18, 2022, the BOP issued Program Statement 5410.01, which expanded the statute's restriction on applying earned time credits for prisoners subject to a "final order of removal" to prisoners with "unresolved immigration status." *Mohammed*, 2025 WL 1909836, at *2. Under this system, prisoners with immigration detainers could earn time credits but could not apply them to prerelease custody or release to supervision. Federal prisoners subject to immigration detainers began filing habeas petitions to challenge the Program Statement as inconsistent with the plain language of 18 U.S.C § 3632(d)(4)(E)(i), and several courts agreed. *Alatorre v. Derr*, No. 22-00516 JMS-WRP, 2023 WL 2599546, at *4 (D. Hawaii Mar. 22, 2023) (collecting cases). BOP changed its policy on February 6, 2023, modifying the Program Statement such that federal prisoners subject to immigration detainers could apply their earned credits toward a transfer into prerelease custody. *Mohammed*, 2025 WL 1909836, at *2. On January 30, 2025, BOP released a new policy directive, again changing course. This policy "reverts BOP back to its original policy position on this issue

by requiring institutions to immediately halt prerelease custody placements for all noncitizens with immigration detainers." (Resp. Habeas [8] at 7.) The policy states that "pending placements in pre-release custody for application of Federal Time Credits (FTC) for all non-U.S. citizens with active detainers will be canceled." (2025 Guidance [17] at 2.) Torres-Guizar's petition, then, challenges the BOP policy as violating the First Step Act. (Petition [1] at 2.)

## **DISCUSSION**

Respondent argues that Torres-Guizar's petition should be dismissed for three reasons: his case is not ripe, he failed to exhaust his administrative remedies, and the First Step Act does not compel BOP to transfer noncitizen prisoners with immigration detainers to prerelease custody. The court addresses each argument in turn.

### 1. Ripeness

In its Response filed on March 27, 2025, Respondent argued that the court should dismiss Torres-Guizar's petition as not ripe because "Torres-Guizar [could not] be considered for RRC or home confinement placement yet." (Def. Resp. [8] at 6.) The case is now ripe: Torres-Guizar's prerelease custody date passed on May 20, 2025, and his home confinement eligibility date passed on May 21, 2026. (Inmate data [8] at 19, 35.) The court thus addresses Torres-Guizar's remaining claims.

### 2. Failure to Exhaust Administrative Remedies

Respondent also argues that Torres-Guizar's petition should be denied for failure to exhaust administrative remedies. (Def. Resp. [8] at 2.) The exhaustion requirement may be "statutorily created or judicially created." *Gonzalez v. O'Connell*, 355 F.3d 1010, 1015 (7th Cir. 2004). 28 U.S.C. § 2241 has no express exhaustion requirements. *See Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). Absent congressional exhaustion requirements, "sound judicial discretion governs." *Gonzalez*, 355 F.3d at 1015 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (superseded by statute on other grounds)). In exercising that discretion, courts have followed a general rule that "parties exhaust prescribed administrative remedies before seeking

relief from the federal courts." *Id.* However, there are exceptions. The Seventh Circuit excuses the exhaustion requirement where:

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Id.* at 1016.

At all times during Torres-Guizar's incarceration, Thomson had a multi-step grievance procedure for inmates challenging elements of their confinement. (Def. Resp. [8] at 2–3.) First is informal resolution: a Thomson inmate "submit[s] a 'BP-8' informal resolution form from a member of his assigned unit team, typically his correction counselor." (*Id.* at 3; 28 C.F.R. § 542.13(a).) If the inmate is dissatisfied with the response to his BP-8, the inmate may submit a formal written Administrative Remedy Request, called a "BP-9." (*Id.*; 28 C.F.R. § 542.14(a).) "The administrative remedy clerk may reject a BP-9 if it does not comply with the administrative remedy procedure." (*Id.*; 28 C.F.R. § 542.17(a).) The inmate may appeal this rejection to the next appeal level; if the request is accepted, the warden provides the inmate with a written response to the BP-9. (Def. Resp. [8] at 3–4.) If dissatisfied with the warden's response, the inmate may submit a "BP-10" form to the regional director within 20 days. (Def. Resp. [8] at 4; 28 C.F.R. § 542.15(a).) Then, if dissatisfied with the regional director's response, the inmate may submit a "BP-11" appeal form within 30 days to the general counsel in the Central Office. (Def. Resp. [8] at 4; 28 C.F.R. § 542.15(a).) If the inmate receives no timely response to their properly filed BP-9 or BP-10, the inmate must consider this silence to be a denial and file an appeal. (Def. Resp. [8] at 4; 28 C.F.R. § 542.18.) The BP-11 form "is the last step of the administrative remedy process." (Def. Resp. [8] at 8.)

Torres-Guizar filed a BP-8 form, and only a BP-8 form, in 2025.[1] (Pet. [1] at 8–14.) He admits in his petition that he did not file a BP-9, BP-10, or BP-11 form, which would have fulfilled his administrative exhaustion burden. (*Id.* at 8; Pet. Rep. [9] at 1.) Torres-Guizar explains that he failed to file these appeals after hearing no response from the warden on his BP-8 form. (Pet. [1] at 8.) However, Respondent rightly notes that even if Torres-Guizar received no response on his BP-8, BOP policy required him to treat nonresponse as a denial and file an appeal. 28 C.F.R. § 542.18.

Though Torres-Guizar has thus failed to exhaust his claim, the court notes that this failure may be excused under the Seventh Circuit's enumerated exception to exhaustion: "appealing through the administrative process would be futile because the agency . . . has predetermined the issue." *Gonzalez*, 355 F.3d at 1016. BOP issued an agency-wide memo in January 2025 "requiring institutions to immediately halt prerelease custody placements for all noncitizens with immigration detainers." (Def. Resp. [8] at 7.) Torres-Guizar is a noncitizen subject to an immigration detainer. (*Id.* at 2.) Under the BOP's January 2025 policy, Thomson would be required to deny Torres-Guizar's request for prerelease custody and any subsequent appeals. Any effort Torres-Guizar made to appeal his BP-8 therefore would have been futile.

Respondent argues that Torres-Guizar's failure to exhaust "should not be excused because his eligibility dates for [residential reentry center] and home confinement placement have not expired yet." (Def. Resp. [8] at 5.) But the court has no reason to expect that, between today and Torres-Guizar's expected release date of November 21, 2026 (Inmate data [8] at 20), BOP will reverse its policy to permit Thomson to proceed with Torres-Guizar's prerelease custody placement. Under the current policy, Thomson has no choice but to deny Torres-Guizar's request for prerelease custody. Torres-Guizar's appeals of his BP-8 form would have been futile, and his failure to exhaust administrative proceedings is excused.

[1] It is unclear when in 2025 he filed this form. He dated the form both January 6, 2025, and December 6, 2025. (Pet. [1] at 14.)

### 3. First Step Act

Respondent next argues that the court should dismiss Torres-Guizar's petition because the First Step Act does not compel the BOP to transfer noncitizen prisoners with immigration detainers to prerelease custody. (Def. Resp. [8] at 6.) Just as in 2022, when the BOP first decided that prisoners with immigration detainers could not apply time credits to prerelease custody, many prisoners have challenged the policy. Some courts have concluded that BOP's policy controls. Others have held that the language of the First Step Act controls, and that BOP has exceeded its authority. *Compare Tomlinson v. Healy*, No. 4-24-CV-012151-JPC, 2026 WL 318973, *4 (N.D. Ohio Feb. 6, 2026) (finding that FSA "did not eliminate the BOP's discretion to determine when, or if, placement into prerelease custody is warranted" for someone with an immigration detainer); *Alqsous v. Emmerich*, No. 25-CV-722-jdp, 2026 WL 125691, at *5 (W.D. Wis. Jan. 16, 2026) (same); *Bojorquez-Parra v. Lammer*, No. 3:25-CV-50099 (N.D. Ill. July 14, 2026) (same) *with Popoola v. Scales*, No. 3:25 CV 390 (DJN), 2025 WL 3473370, at *14 (E.D. Va. Dec. 3, 2025) (holding that "the FSA crafted a statutory scheme that *requires* BOP to apply eligible inmates' earned FSA credits," and that "BOP may [not] rely solely on immigration detainers to deny application of credits earned under the statute") (citations omitted); *Mohammed*, 2025 WL 1909836, at *11 (deciding that BOP's detainer policy is *ultra vires*) (also collecting cases). These opinions provide guidance, but are not controlling.

Respondent argues that the plain language of the First Step Act gives BOP broad discretion toward prerelease custody "or" supervised release. Pub. L. No. 115-391, 132 Stat. 5194. Because BOP has already credited Torres-Guizar with 365 days of supervised release, Respondent argues, applying additional credits to prerelease custody is within BOP's discretion, as BOP need not "allocate [time credits] to prerelease custody *and* supervised release." (Def. Resp. [8] at 8.) But as this court reads the statute, its structure undermines that interpretation. The statute does not distinguish between inmates eligible for one application of time credits (prerelease custody) or the other (supervised release). For instance, under 18 U.S.C. §

3632(d)(4)(D), any prisoner serving a conviction under any one of 68 provisions is barred from receiving time credits—this applies to *both* prerelease custody *and* supervised release. Moreover, provision (d)(4)(E) provides that a prisoner "is ineligible to apply time credits under subparagraph (C) if the prisoner is the subject of a final order of removal," and provision (C), in turn, applies to *both* prerelease custody *and* supervised release. §§ 3632(d)(4)(C), 3632(d)(4)(E). As Respondent reads the statute, immigrants with detainers would be the only category of prisoners explicitly able to earn credits for supervised release but not for prerelease custody. The court presumes that prisoners who accrue more than 365 time credits—the limit for supervised release—apply them to receive prerelease custody. *Sacks v. Kyprios,* No. 1:24-cv-02184-JMS-KMB, 2026 WL 2546025, at *2 (S.D. Ind. Aug. 28, 2026) ("Additional FSA credits earned over the 365-day threshold may be applied toward early transfer to prerelease custody."). That is, BOP regularly applies time credits to both categories. The court therefore declines to adopt Respondent's interpretation.

Respondent also suggests that 18 U.S.C. § 3624(g)(2)(B) gives BOP great discretion over when to place prisoners in prerelease custody. That statute provides: "A prisoner placed in prerelease custody pursuant to this subsection who is placed at a residential reentry center shall be subject to such conditions as the Director of the [BOP] determines appropriate." 18 U.S.C. § 3624(g)(2)(B). As such, Respondent argues that "BOP's broad discretion to impose prerelease custody conditions . . . should be read to authorize" BOP's January 2025 policy directive. (Resp. Habeas [8] at 9.) Respondent ultimately concludes that, even though this text "speaks in terms of prisoners already placed at a residential reentry center," it ought to be read to apply prisoners not yet placed at one. (*Id.*)

The court does not find this persuasive. Congress enumerated that time credits earned by prisoners "*shall* be applied toward time in prerelease custody or supervised release," and BOP "*shall* transfer eligible prisoners . . . into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphasis added); *see also* 18 U.S.C. § 3624(c)(1)–(2) (the BOP "shall, to the

extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term . . . under conditions that will afford a reasonable opportunity to adjust and prepare for the reentry of that prisoner into the community," including home confinement and community corrections facilities); 18 U.S.C. § 3624(g)(2) (identifying home confinement and RRCs as types of prerelease custody). "Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016). The statute requires that BOP apply prisoners' time credits to prerelease custody or supervised release, subject to dozens of enumerated exceptions, including that the prisoner is subject to an order of removal. The statute says nothing about immigration detainers.

As noted, several courts have rejected the BOP's arguments invoking its discretion in inmate placement, in light of the mandatory language in the First Step Act. *Popoola*, 2025 WL 3473370, at *8 ("The mandatory language in § 3632(d)(4)(C), especially when viewed in the context of the statute as a whole, clearly reflects Congress's intent to impose a mandatory obligation upon the BOP to award FSA time credits to eligible inmates and apply such time credits to supervised release or prerelease custody."); *Adepoju v. Scales*, 782 F. Supp. 3d 306, 317 (E.D. Va. 2025) ("Like subsection (d)(4)(A), governing the earning of time credits, subsection (d)(4)(C), regarding the application of the credits, is mandatory.") *Mohammed*, 2025 WL 1909836, at *11 ("BOP lacks any discretion to exclude an eligible prisoner from having his earned time credits applied under the Act, given the mandatory nature of the language of [the Act].") This court agrees. When Congress enumerated dozens of exceptions to its mandate, it did not at the same time grant BOP the discretion to create new ones. *Esteras v. United States*, 145 S. Ct. 2031, 2040 (2025) (describing the "well-established canon of statutory construction: expressio unius est exclusion alterius—in plain English, expressing one item of an associated group or series excludes others left unmentioned" (cleaned up and citation omitted)).

Finally, Respondent argues that Torres-Guizar poses security concerns or a flight risk because of his immigration detainer. True, under 18 U.S.C. § 3621(b), BOP may consider

"security concerns" in determining a prisoner's placement, and Respondent argues that the First Step Act could not have displaced or modified this discretion. (Def. Resp. [8] at 9–10.) But the statute says that the BOP "shall designate the place of the prisoner's imprisonment" by taking into account "the prisoner's security designation, the prisoner's programmatic needs, the prisoner's mental and medical health needs, and any request made by the prisoner related to faith-based needs, recommendations of the sentencing court, and other security concerns of the Bureau of Prisons." 18 U.S.C. §§ 3621(b). Section (h) of the statute addresses prerelease custody, and does not mention security concerns. While BOP could, in one context, account for a prisoner's specific "security designation" when determining their place of imprisonment, that does not mean that this discretion overcomes the First Step Act's thoughtful calculation of when BOP "shall" apply credits for supervised release or prerelease custody. The statute itself appears to take account of the security risks of prerelease by requiring that a prisoner seeking such release participate "recidivism reduction programming or productive activities.

**CONCLUSION**

For the reasons set forth above, the court will GRANT Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241.

ENTER:

Dated: September 30, 2026

REBECCA R. PALLMEYER
United States District Judge